## MELVIN S. DUNLAP *vs.* JACOB GIPSON.

*Action to Recover Damages for Failure to Record a Proper Deed—*
*Insufficiency of Pleadings and Evidence.*

Plaintiff's evidence in this case was that he had bought two acres of land adjoining his property and had gone with the vendor, one Edwards, to the defendant, a Justice of the Peace, to have a deed drawn and that the defendant had promised to have the same duly recorded; that the deed was not at that time actually executed, but plaintiff entered into possession of the land and has so continued; that a third party claims to have received a subsequent deed for the part of the said land from the said Edwards; that a deed to the plaintiff prepared by the defendant conveyed only a part of the land actually bought. The declaration alleged in one count that the defendant had failed to have recorded a deed which the plaintiff had left with him and which he had promised to have recorded, whereby the plaintiff was deprived of his property; and alleged in the second count that the defendant had caused to be recorded a deed to the plaintiff which did not contain an accurate description of the property that was intended to be conveyed, and that the incorrectness of the description was known to the defendant and the vendor "whereby the plaintiff has been deprived of his property." *Held*, that under the pleadings and evidence the plaintiff is not entitled to recover because he is still in possession of the land and there was no evidence from which the jury could find that the defendant had caused an incorrect deed to be executed by Edwards to the plaintiff or what damages had been suffered by the plaintiff.

Appeal from the Circuit Court for Anne Arundel County (REVELL, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD and SCHMUCKER, JJ.

*James M. Munroe*, for the appellant.

The sole cause of action set out in the declaration is 'that plaintiff was deprived of his land by the acts of the defendant set out therein, viz: 1st, not delivering for record a deed; 2nd, delivering for record an erroneous deed.

*How* the plaintiff was "*deprived of his land*" by the acts complained of, there is no attempt to show. The fact that the plaintiff was deprived of his land at all, nowhere appears in the evidence. On the contrary, *all the evidence shows conclusively* that the plaintiff was at all times in full, complete and exclusive possession of the very land he says he bought and for which he claims he should have received a deed. Plaintiff says "that he entered into possession of the land purchased by him from Edwards and built a house on that part which lies near Edwards' private road, &c., and dug a well on the further end of the land up near Mr. Frank S. Revell's land." There was never any doubt about what land he bought; Edwards never objected to his having possession of the property; Colson knew perfectly well that he had bought that property *because he had seen him in possession of it."*

The aforegoing is part of the plaintiff's own testimony.

It is further shown by the evidence that one H. Colson, who also claimed an acre of the tract of land claimed by the plaintiff Gipson, sent Gipson, through the defendant, notice not to trespass further on that acre of land; and that he (Colson), did not desire him (Gipson), to clear it up or work it. This also shows that appellee was in possession of that land; else there would have been no occasion for such a notice. So far from appellee having been deprived of his land, he never even knew until 1902, six years after his purchase, that any one else had any claim to any part of his purchase.

In this state of proof by the plaintiff, what possible relevancy under the pleadings in this case, could there be in the question? "State whether or not anybody has filled up your well, and if so, who did it and when?" *Non constat* but that some third party committed this trespass. In point of fact the answer shows that a third party did do so. *Non constat*

but that said trespass may be the subject of another suit. In point of fact, so it is. The Court should not have permitted the question to be asked. But the evidence was admitted subject to exception and to be stricken out if, after all the testimony was in, the Court determined that this testimony was inadmissible. As the record is silent as to motion to strike out that testimony and that of the ruling of the Court thereon, no comment is made on that subject. But appellant insists that he does not lose the benefit of his exception to the question on account of his failure to except to the refusal or omission of the Court to strike out the answer to the question aforesaid, which was duly excepted to; and further insists that whatever may be the rule as to the admission of evidence, subject to exception, and to be stricken out *on motion*, yet where testimony is *absolutely irrelevant to any issue made by the pleading and cannot in any view or under any circumstances become relevant*, and where express objections is made to its admissibility when offered *under the pleadings*, the appellant does not lose the benefit of his exception, properly noted, by subsequent failure to move to strike out such testimony.

But suppose all the testimony in the record is properly before the Court, and admitting all the plaintiff's evidence to be true and all defendant's evidence to be false, how, *under the pleadings* in this case, can the plaintiff recover ?

No appearance for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a judgment against the appellant, as defendant, in an action brought by the appellee in the Circuit Court for Anne Arundel County.

The declaration contains two counts. The first count avers that the defendant failed to have recorded among the land records of Anne Arundel County a deed from George Edwards to the plaintiff which the latter had left with him for that purpose and which he had promised to have so recorded, "whereby the plaintiff is deprived of his property." The second count avers

that in March, 1902, the defendant without the knowledge or consent of the plaintiff procured to be recorded in said land records a deed from George Edwards to the plaintiff purporting to convey a certain parcel of land ("not describing or identifying it") lying in the third election district of said county but that the deed "did not contain in its description the property that was intended to be conveyed" by said Edwards to the plaintiff and that both Edwards and the defendant were aware that the deed did not contain the property to be conveyed, "whereby the plaintiff has been deprived of his property."

To this *narr.* the defendant pleaded that he did not commit the wrong alleged.

At the trial of the case the plaintiff offered his own and other evidence tending to prove that in September, 1896, he had bought for $25 from one George Edwards, who had since then died, a piece of land containing a little over two acres in said third district lying in front of Edwards' house and extending from the intersection of his private road with the Marley Neck Road up to Frank S. Revell's land. That the land so purchased by him had been measured off for him by the grantor's son Oliver and a surveyor named Mancha and that he had therefore entered upon and had ever since retained possession of it without any objection from Edwards and that he had erected a house on it, and had also sunk a well on the part of it lying near Revell's line. That having paid for the land he went with Edwards to the office of the defendant, who was a Justice of the Peace, and attended to Edwards' business, to have a deed drawn for the land, and that the defendant then gave him a receipt as follows : "Received October 3rd of Jacob Gipson a deed from George Edwards to the said Gipson for 2 acres of land more or less said deed to be recorded on or before the 2nd of April, 1897."

There is no evidence that a deed for the land had in fact been executed to the plaintiff when the receipt was given. On the contrary the plaintiff himself testified that the defendant sometime afterwards told him that there was some trouble about his getting a deed on account of Edwards' wife, but that the receipt he had given him was as good as a deed.

The plaintiff further offered evidence tending to prove that in the summer of 1902, one Carter H. Colston had filled up the plaintiff's well and had notified him not to trespass on his, Colston's land. That he then upon inquiry found out that in February, 1902, Edwards had, by a deed prepared by the defendant, sold for $100 to Colston, thirteen acres of land including one acre, lying next to Revell's line, of the land sold in 1896 to the plaintiff. And further that in March, 1902, Edwards had also executed a deed, prepared and recorded by the defendant, to the plaintiff for only a portion of the land sold to him omitting therefrom the one acre lying next to Revell's line. The plaintiff also testified that the well was worth $100 to him and the acre of land was worth $50.

The defendant offered evidence tending to prove that Edwards did not sell to the plaintiff the acre of land lying next to Revell's line and that the deed actually executed by Edwards to the plaintiff conveyed all the land which he had sold to him.

The plaintiff offered no prayers, but the defendant offered three, all of which were rejected by the Court.

The defendant's prayers asked the Court to instruct the jury that the plaintiff was not entitled to recover in the case because, as asserted in the first prayer, there was no evidence by which the jury under the pleadings in the case could assess any damages suffered by the plaintiff; and because, as asserted in the second prayer, there was no evidence legally sufficient under the pleadings in the case to entitle the plaintiff to recover; and because, as asserted in the third prayer, the plaintiff under the undisputed evidence in the case had not been deprived of the land in the declaration mentioned.

These prayers of the defendant should have been granted. The injury for which the plaintiff sues, he declares in his declaration, arose from having been deprived of his property. Yet by his own testimony he has been in possession and enjoyment of the lot, which he insists that Edwards sold him, ever since the date of its purchase in 1896. It is true that he avers, in the second count of the declaration, that the deed

which Edwards executed to him did not contain in its description the property which he purchased, but he did not offer in evidence either the deed or a copy of it so that the jury could see what land it did in fact convey.    Nor does the record contain any evidence that the defendant induced Edwards not to convey the correct lot to the plaintiff or that Edwards was ignorant of the contents of the deed to the plaintiff when he executed it.

There is no evidence that the defendant was employed or paid by the plaintiff to prepare the deed.    The plaintiff himself testified that the defendant when he drew the deed was attending to the business of Edwards, the grantor, and there is no evidence that he did not draw it according to the instructions of his principal.

Nor is there any evidence connecting the defendant with alleged trespass of Colston in filling up the plaintiff's well, nor could damages for that trespass be recovered under the pleadings in this case.

Whatever may be the equitable rights of the plaintiff against Edwards and those claiming under him relative to a correction of the alleged erroneous deed, there is no legally sufficient evidence in the record to hold the defendant for damages under the pleadings in the case.

The judgment appealed from must be reversed.

*Judgment reversed with costs without awarding a new trial.*

(Decided December 4th, 1903.)